UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TODD C. THIEL,

        Plaintiff,

PAUL GEHL,

        Intervenor-Plaintiff,

    v.                                                                                               Case No. 12-C-530

WILLIAM WRIDE,

        Defendant.

## DECISION AND ORDER

Before me presently is a motion to dismiss filed by Defendant William Wride. Wride asserts that the intervenor complaint filed against him by Paul Gehl fails to state a claim and fails to join an indispensable party. For the reasons given herein, the motion will be granted in part but denied in most respects.

**I. Background**

Plaintiff Todd Thiel brought this action against William Wride for breach of contract and promissory estoppel. These claims are based on promises Wride allegedly made to Thiel concerning the distribution of assets from a failed real estate investment in the United Arab Emirates. After Thiel filed his lawsuit against Wride, this court allowed a third party, Paul Gehl, to intervene. It is his complaint against Wride that is now at issue.

According to the original complaint, Thiel and Wride created an entity called Capital Partners FZ-LLC with the purpose of investing in real estate in Dubai. Although Paul Gehl invested $10 million in the company, the company was managed and owned entirely by Thiel and Wride. In 2007 Capital Partners had a dispute with a Dubai company, which resulted in arbitration. In the same year, Thiel, Wride and Gehl met and signed an agreement governing how the proceeds of that arbitration would be distributed ("the 2007 Agreement").

According to Gehl's intervenor complaint, the 2007 Agreement mandates that the arbitration proceeds would be distributed equally to the three men after legal fees and expenses were taken care of. (ECF No. 32 at ¶¶ 12-15.) That complaint further alleges that Defendant Wride has improperly retained, or at least failed to properly distribute, significant funds arising out of the arbitration. In short, instead of paying Gehl any of the money Capital Partners received from the arbitration, Wride has retained it all either for himself or for unspecified other purposes. The complaint brings claims based on breach of contract as well as a number of equitable theories, including unjust enrichment, breach of fiduciary duty and constructive trust.

**II. Analysis**

**A. Dismissal under Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint rather than any evidence that might support the claims. In ruling on a Rule 12(b)(6) motion, a court takes the facts from the complaint, accepts them as true, and draws reasonable inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 879 (7th Cir. 2012).

2

Wride first argues that the 2007 Agreement is void as a matter of law. Because that agreement forms the basis of the intervenor complaint, he argues that all of Gehl's claims must be dismissed for failure to state a claim. Specifically, Wride argues that the United Arab Emirates' law governing the winding-up of corporations trumps any agreement previously entered into by the parties. For his part, Gehl argues that UAE law should not apply here and that, even if it did, Wride has not proven how that law would impact this case, which is a factual question inappropriate for resolution through a motion to dismiss.

**1. Choice of Law**

The first question is whether Wisconsin law or UAE law applies to the resolution of this dispute. Where a contract is involved, Wisconsin courts must apply the law of the state with which the contract has its "'most significant relationship.'" *State Farm Mut. Auto. Ins. Co. v. Gillette,* 2002 WI 31, ¶ 26, 251 Wis.2d 561, 577, 641 N.W.2d 662, 670-67 (Wis. 2002). Courts making such a determination consider the following "grouping of contacts," set forth in § 188 of the RESTATEMENT (SECOND) OF CONFLICTS: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *NCR Corp. v. Transport Ins. Co.,* 2012 WI App 108, 344 Wis.2d 494, 501-502, 823 N.W.2d 532, 535 (Wis. Ct. App. 2012) (citing RESTATEMENT (SECOND) OF CONFLICTS § 188 (Proposed Official Draft, Part II)). These factors are considered with a mild presumption that the forum state's law should apply.

Here, the analysis is not so straightforward. In a typical case, the parties are in agreement that a certain single event—a car crash, or a contract—could give rise to various rights, and the

3

question is which forum's law should be looked to as the source of those rights. It is an either-or analysis: either Wisconsin's law applies, or the foreign forum's law applies. Here, by contrast, there is no single event that gives rise to the dispute, and thus there is no way to conclude that a single forum's law would apply to the entire relationship between the parties. For example, even if Wisconsin law would apply to the 2007 Agreement, it would not make sense to further conclude that Wisconsin law "applies" to the dissolution of a UAE company. Wisconsin's law could not dictate the terms under which a foreign entity would dissolve for the simple reason that parties could not contract to do something that a governing foreign law forbids.

Although this is not a traditional choice-of-law problem, there can be no doubt that Capital Partners FZ-LLC was a UAE company and was wound-up pursuant to UAE law. As noted earlier, it would not make sense to say that Wisconsin law "applies" to that event because Wisconsin simply has no laws governing the winding up of companies in the United Arab Emirates. Here, the intervenor plaintiff is complaining that in winding up the company, Wride failed to pay out enough of the proceeds. It is essentially that event that we have to analyze, and to do so we must resort to UAE law, the only law that applies to that event. This does not mean that the 2007 agreement is irrelevant or "void"—it simply means that we have to assess how UAE law would treat that contract.[1]

---

[1] Because the typical choice-of-law analysis does not apply here, I am not following the typical "grouping of contacts" approach. If that analysis did apply, however, I would conclude that UAE law applies. The only relevant Wisconsin connections are the fact that the 2007 contract was drafted by a Milwaukee law firm and the parties are from Wisconsin. Although those would sometimes be compelling factors, here the dispute centers on how to operate a company located in, and governed by, UAE law. It should come as no surprise that the UAE's law would apply in a case like this.

4

The key question is simply this: what effect does the 2007 agreement have under the UAE law governing the winding up of companies? It is not as though UAE "trumps" either Wisconsin law or the 2007 Agreement; instead, the question is simply what role that agreement would play under the winding up system the UAE has created. It is not unlike a bankruptcy, where a pre-existing contract might grant rights to an individual as a creditor *within* the bankruptcy system, but that contract does not necessarily make the individual first in line to the exclusion of other creditors. The bankruptcy laws do not "trump" or "void" (to use Wride's term) the contract in the sense that they wipe it away, they simply govern what role that contract plays in the process of distributing proceeds. The same holds true here. The point is not to determine whether either forum's law "trumps" the other's, it is to determine what effect UAE law would give to a pre-existing contract.

## 2. UAE Law

The key question, then, is what the UAE law requires or allows in a situation like this, where one party claims a contractual right with respect to a company that is being wound up. Wride argues that once the company began winding up, UAE law required it to enter liquidation under the direction of one or more liquidators. At that point, the company's debts became due immediately. If the company lacked sufficient funds, it must settle the debt on a pro rata basis, "without prejudice to the rights of preferred creditors." (ECF No. 27-3, Article 302.)

Wride argues that the company had many debts and thus was unable, under UAE law, to pay Gehl anything. In other words, even if Wride (as the liquidator) had wanted to pay Gehl, UAE law (like our federal bankruptcy law) would have prevented him from preferring Gehl's debt to that of the other creditors.

5

Absent from this argument, however, are any concrete details or any explanation of who the other debtors were. Moreover, Wride does not explain how, if the debts were to be paid on a *pro rata* basis, Gehl would still have received *nothing* from the winding up. He was, after all, the largest single creditor, having staked $10 million. Instead, the only way Wride would have been justified in failing to pay a dime to Gehl is if there were some very large preferred creditor who was entitled, under UAE law, to receive the entirety of the company's funds. We have no indication that such is the case.

In fact, even if Wride is ultimately proven correct, the matters his motion raises are not appropriate for a motion to dismiss, which requires that I rule based solely on the pleadings. Wride asks the court not only to assume he is correct about a point of foreign law[2], but asks the court to assume that his version of the facts is true. That is not appropriate in a motion under Fed. R. Civ. P. 12(b)(6). Accordingly, I cannot conclude at this time that Wride is entitled to have the complaint against him dismissed based on UAE law.

**3. Wride's Personal Liability**

Wride also argues that he cannot be sued in his personal capacity because he was acting as the liquidator for Capital Partners, and the same UAE law cited above contains a provision exempting liquidators from liability when they are acting in their capacity as liquidators. Article 305 says that "Actions taken by the liquidator and required by the winding-up process, and as long as they fall within his jurisdiction, shall be binding on the company, and the liquidator shall be held harmless of any liability arising directly from such actions." (ECF No. 27-3, Article 305.)

---

[2]Gehl argues that Wride has not adequately proven foreign law. For present purposes, I assume without deciding that the UAE law is as he describes it.

6

Case 1:12-cv-00530-WCG   Filed 11/04/13   Page 6 of 13   Document 39

But again this provision, assuming that it applies, is not as straightforward as it sounds. We do not know, for example, what UAE law would have to say about a claim like this, where the Plaintiff is essentially arguing that the liquidator misappropriated the company's funds for his own personal use. Is that action within the liquidator's "jurisdiction"? Since we know nothing about how the funds were actually disbursed and whether other creditors actually existed (much less whether and why they would have preference over Gehl), it is impossible to say at the 12(b)(6) stage that UAE law bars any liability whatsoever on Wride's part. Moreover, Section 311 of the UAE law provides that "The liquidator shall be liable towards the company if , during the period of winding-up, he has mis-conducted its affairs. He shall also be liable to damages for the prejudice sustained by third parties as a result of his faults." (ECF No. 27-3.) We have no way to know at the pleadings stage whether the conduct alleged against Wride constitutes misconduct. Certainly Gehl's complaint suggests as much, however, and inferences must be made in his favor. In sum, just as we cannot take Wride's word for it that UAE law forced him to pay funds to certain unnamed creditors, we cannot assume that he was working within the proper bounds of his role as a liquidator of the company's assets and thus shielded from liability (assuming that his recitation of UAE law is accurate).

**4. Breach of Fiduciary Claim**

Wride also argues that Gehl's claim alleging breach of fiduciary duty fails to state a claim because UAE law precludes such liability and, even if it didn't, Gehl can point to no authority that would have rendered Wride his fiduciary. The question of whether UAE law precludes personal liability was addressed above. The simple fact is we do not know enough either about UAE law or about the facts of this case to reach a conclusion on that point.

7

But Wride also argues that even if we put UAE law to one side, there would be no basis for a fiduciary claim because the 2007 Agreement never created any fiduciary responsibilities. Although Gehl concedes as much, he notes that a fiduciary relationship can arise when one party has an inferior knowledge of the facts and the other possesses more control. Here, Gehl was relying solely on Wride's good faith to distribute the proceeds as their agreement required, and Gehl had no ability to influence Wride's actions as the company's liquidator.

"Manifest in the existence of a fiduciary relationship is that there exists an inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of facts involved, or other conditions giving to one an advantage over the other." *Production Credit Ass'n of Lancaster v. Croft,* 143 Wis.2d 746, 755-756, 423 N.W.2d 544, 547 (Wis. Ct. App. 1988). *Croft* was a case brought by farmers who alleged they relied on the defendant's financial expertise. Here, by contrast, Gehl was a sophisticated investor who, with the aid of counsel, entered into an agreement with the Defendant. If that agreement ultimately gives him contractual rights, that is one thing. But there are none of the hallmarks of a fiduciary relationship here, even assuming all the facts in the intervenor complaint are true. The fact is that Gehl agreed to fund a company that was governed by UAE law, and he must have expected that there was a chance that the company would be wrapped up and liquidated by one or more of its officers. The fact that one of them (Wride) became the liquidator does not *ipso facto* mean that there was some sort of inequality of knowledge or power that would warrant viewing the relationship as a fiduciary one.

Gehl also argues that a fiduciary relationship arose out of the fact that he was a creditor of an insolvent company. In *Beloit Liquidating Trust v. Grade,* 2004 WI 39, 270 Wis.2d 356, 677 N.W.2d 298 (Wis. 2004), the Wisconsin Supreme Court found that Wisconsin's law imposed

8

fiduciary duties on officers and directors of a company when the company is insolvent and no longer a going concern. In doing so, however, the Court was clearly invoking Wisconsin law for its holding. " Section 180.1704 puts all corporations on notice that, when transacting business in Wisconsin, they are subject to Chapter 180. Given this clear statutory language . . . we conclude that the language of § 180.1704 supports the holding that Wisconsin law should be applied in determining whether the directors or offices breached their fiduciary duty to Beloit Corporation's creditors." *Id.* at ¶ 23. Here, Wisconsin's corporation law would not apply to a UAE property development company that never conducted any business in Wisconsin.

In sum, even taking the allegations in the light most favorable to Gehl, there are no indicia suggesting the existence of a fiduciary relationship. The breach of fiduciary duty claim will therefore be dismissed.

**5. Necessary Party**

Wride also argues that even if the intervenor complaint's allegations state claims upon which relief may be granted, the complaint should be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to name a necessary party. Specifically, Wride argues that Capital Partners FZ-LLC, the Dubai entity, must be named or else he and the company will be prejudiced.

The joinder analysis is a two-part undertaking. First, a court determines whether an unnamed party is a necessary party. If so, the court then proceeds to consider whether the failure to join the party requires the action to be litigated in another forum (i.e., the case is dismissed) or whether the action may proceed despite the absence of the unjoined party.

Fed. R. Civ. P. 19 requires that a complaint name all required parties. A party is "required" if:

9

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Wride devotes the bulk of his argument to the fact that Capital Partners was a party to the 2007 agreement and therefore has an interest in how its proceeds were distributed under that agreement. "A judicial declaration as to the validity of a contract necessarily affects, 'as a practical matter,' the interests of both parties to the contract." *United States ex rel. Hall v. Tribal Development Corp.,* 100 F.3d 476, 479 (7th Cir. 1996). He also argues that Capital Partners has an interest in the funds at issue here and must comply with UAE law in distributing those funds (not all of which have been distributed, apparently). Gehl argues, however, that Capital Partners is not a required party because it is essentially a defunct entity with no assets. With only a theoretical existence (at best), the company is not claiming any actual interest in the outcome of this lawsuit.

First, the mere fact that Capital Partners is a party to the 2007 Agreement does not mean its presence is "required" here. Contrary to Wride's assertions, the question raised in the intervenor complaint is not whether the 2007 agreement is "void" or valid (as in *Hall*, *supra*), it is whether Wride's own actions violated any laws, agreements or duties he had to Gehl. There is a general principle that signatories to a contract are necessary parties when an action is brought to set the contract aside, *Disabled Rights Action Committee v. Las Vegas Events, Inc.,* 375 F.3d 861, 881 (9th Cir. 2004), but this is not that kind of action. Instead of trying to invalidate a contract, Gehl is

10

trying to *enforce* what he views as his contractual rights. The 2007 Agreement might indeed be a key part of this case, but Gehl is relying on that agreement to demonstrate a right he has against Wride, not against the company. Wride has not explained how any rights or obligations of the company itself might be implicated here. Some contracts have dozens or even hundreds of signatories, but that does not mean every signatory must be joined in a lawsuit when there is a dispute between two or three of the signatories. *United States v. Herndon,* 2012 WL 1252495 (S.D. Tex. 2012) (dispute involving only a few parties did not require presence of more than forty other signatories to the contract).

Wride also argues that Capital Partners has an interest here because it is in the process of distributing its assets and needs to do so in conformity with UAE law. This lawsuit could impact its ability to do so if this court were to conclude that Wride's obligations to Gehl were somehow at odds with his obligations under UAE law. But in this instance, Wride is essentially standing in the company's shoes. If UAE law provides him the defenses Wride believes it does, then nothing changes. If instead I conclude that Wride—personally—owes Gehl money, then that is a matter between Wride and Gehl—not Capital Partners. It might be true (at this stage we do not know) that Capital Partners still has some of the funds that Gehl alleges he's owed. If so, then the resolution of the parties' rights in these proceedings will assist Wride in fulfilling his duties as the company's liquidator. There is no reason to believe that any inconsistency will result. Accordingly, I conclude that Capital Partners is not a necessary party under Rule 19(a).

**6. Indispensable Party**

Even if I concluded Capital Partners were a "necessary" party, I could not conclude that it was an indispensable one. Rule 19(b) provides that if a necessary party cannot be joined, the court

11

must then assess whether to proceed with the lawsuit anyway or to dismiss it. Fed. R. Civ. P. 19(b). The rule lists a number of factors to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>    (A) protective provisions in the judgment;
>    (B) shaping the relief; or
>    (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). *Salton, Inc. v. Philips Domestic Appliances and Personal Care B.V.,* 391 F.3d 871, 877 (7th Cir. 2004).

The first problem for Wride is that there is little indication here that Capital Partners could not be joined as a party. Dismissal is a somewhat drastic remedy and is only appropriate when "a person who is required to be joined if feasible cannot be joined." Fed. R. Civ. P. 19(b). Here, both of Capital Partners' owners are already in this lawsuit, and Wride does not even attempt to explain why it is not feasible to join Capital Partners itself. For that reason alone I could not find Capital Partners indispensable.

But naming Capital Partners as a party would appear to be an unnecessary formality, given that all three interested parties are already present in this action. The fact that both of the company's owners (Thiel and Wride) are already litigating in this action means that the company's interests are well-protected. In other words, it is not as though matters affecting the company will be handled in this action without input from company officials. Similarly, it is hard to divine what

12

"prejudice" would occur to the company by not being named here.  Its purpose, after all, was to serve as a vehicle through which the three individuals involved would (ideally) make money, and when things didn't go as planned it served as a conduit for the distribution of proceeds from an arbitration.  Those three individuals are now litigating their rights to those proceeds.  Capital Partners *itself* has no independent or corporate interest in this lawsuit; to the extent the company has any "interest" in these proceedings at all, it is merely one that is derivative of its owners and managers.

In sum, because there is no stated reason that Capital Partners could not be joined here, I am unable to conclude that dismissal is appropriate under Fed. R. Civ. P. 19(b).  And even if the company could not be joined, I would allow the action to proceed because none of the Rule 19(b) factors (prejudice, adequacy of the judgment, etc.) are implicated.

### III. Conclusion

For the reasons given above, the motion to dismiss is **GRANTED** in part, and the breach of fiduciary claim is **DISMISSED**.  The motion is **DENIED** in all other respects.  The clerk is directed to contact the parties to arrange a telephonic scheduling conference.

**SO ORDERED** this   4th    day of November, 2013.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
